# CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN, P.C.

### COUNSELLORS AT LAW

| | | | |
|---|---|---|---|
| CHARLES C. CARELLA | JAMES T. BYERS | 5 BECKER FARM ROAD | RICHARD K. MATANLE, II | RAYMOND J. LILLIE |
| BRENDAN T. BYRNE | DONALD F. MICELI | ROSELAND, N.J. 07068-1739 | DONALD S. BROOKS | WILLIAM SQUIRE |
| JOHN N. BAIN | A. RICHARD ROSS | PHONE (973) 994-1700 | FRANCIS C. HAND | ALAN J. GRANT° |
| JOHN G. GILFILLAN, III | KENNETH L. WINTERS | FAX (973) 994-1744 | AVRAM S. EULE | LAURA S. MUNZER |
| PETER G. STEWART | JEFFREY A. COOPER | www.carellabyrne.com | LINDSEY H. TAYLOR | MARC D. MICELI |
| ELLIOT M. OLSTEIN | CARL R. WOODWARD, III | | RAYMOND W. FISHER | RAYMOND E. STAUFFER° |
| ARTHUR T. VANDERBILT, II | MELISSA E. FLAX | | DAVID J. REICH | JACOB A. KUBERT |
| JAN ALAN BRODY | DENNIS F. GLEASON | | DECANDA M. FAULK | STANLEY J. YELLIN |
| JOHN M. AGNELLO | DAVID G. GILFILLAN | | OF COUNSEL | FRANK J. CHESKY III |
| CHARLES M. CARELLA | G. GLENNON TROUBLEFIELD | | | STEPHEN R. DANEK |
| JAMES E. CECCHI | BRIAN H. FENLON | June 25, 2007 | | DANIEL J. MULLIGAN |
| | KHOREN BANDAZIAN | | | °MEMBER N.Y. BAR ONLY |

JAMES D. CECCHI (1933-1995)

***Via Electronic Filing and Federal Express***
Patty Shwartz, U.S.M.J.
Frank R. Lautenberg United States Post Office
    & Courthouse Building
Federal Square
Newark, New Jersey 07101

>           **Re:**   ***Mars, Inc. v. Natraceutical, S.A.***
>                     **Civil Action No. 07-1574(SRC)**

Dear Judge Shwartz:

Pursuant to the Court's Scheduling Order, dated April 27, 2007, counsel for Mars, Inc. and Natraceutical S.A. are submitting this joint letter regarding outstanding discovery issues in this case. Counsel for both parties have, on several occasions, met and conferred on several discovery matters, and have resolved most issues.

The following matters have not been resolved, despite several meet and confer attempts.

**1)      Natraceutical's response to Mars' Interrogatory No. 2 regarding Natraceutical's non-infringement and claims construction positions.**

     **a)**      <u>*Mars' Interrogatory No. 2*</u>:   For each product you identify in response to Interrogatory No. 1 that you contend does not infringe the claims of the patents-in-suit as alleged in the Complaint and in Mars' Memorandum in Support of Its Application for An Order to Show Cause for Preliminary Injunction, set forth in detail the basis for your non-infringement contentions, including without limitation: (a) your claim construction and the basis therefore of each element or term as to which you disagree with Mars' proffered construction, (b) each claim element that you allege is absent from each accused product or otherwise not covered by the claim; (c) whether each such specific claim element is missing literally or under the doctrine of equivalents, or both; (d) each statement, amendment, disclaimer or argument upon which you base any assertion of estoppel as to claim scope; and (e) the identities of persons with knowledge of such matters who you may call at the preliminary injunction hearing.

     **b)**      <u>*Natraceutical's Response to Interrogatory No. 2*</u>:   "In addition to the General Objections 1-17, NATRACEUTICAL objects to the Interrogatory as being a multiple and compound request constituting more than one interrogatory. NATRACEUTICAL also objects to

Dockets.Justia.com

Patty Shwartz, U.S.M.J.
June 25, 2007
Page 2

the Interrogatory to that extent it calls for legal conclusions. NATRACEUTICAL further objects to the Interrogatory on the ground that such contention interrogatories are premature at this stage of the case, especially because MARS bears the burden of proof of its infringement allegations and because the interrogatory calls for information which will be the subject of expert testimony and expert discovery. In addition, the Court has not construed the language of the asserted claims of the '966 Patent and the '753 Patent. Further, NATRACEUTICAL objects to the Interrogatory as specifically calling for information covered by the attorney-client privilege and the attorney-work product doctrine.

"Subject to and without waiving the general and specific objections, after receiving MARS' infringement contentions in its affirmative expert report(s), NATRACEUTICAL will set forth its non-infringement contentions in its responsive expert report(s) and in its opposition to MARS' Preliminary Injunction Motion in accordance with the Court's April 26, 2007 Order for Informal Application.

"Additionally, NATRACEUTICAL will produce, pursuant to Fed. Civ. R. 33(d), non-privileged documents upon which NATRACEUTICAL may rely to establish that NATRACEUTICAL does not infringe the asserted claims of the patents-in-suit. Further, regarding identities of persons with factual knowledge of the accused products and their manufacture, NATRACEUTICAL has complied with the disclosure requirements of Rule 26(a)(1) and incorporates its Initial Disclosures by reference into this response.

"NATRACEUTICAL reserves the right to amend, supplement and/or alter this response as discovery progresses."

**c)** As noted above, counsel for both parties have had several telephone conferences and exchanged correspondence in an effort to resolve this issue, but have been unsuccessful.

**d)** *Plaintiff's Position.* As evidenced in Natraceutical's response to Mars' Interrogatory No. 2, Natraceutical has refused to present: (1) its non-infringement bases, (2) its claim construction contentions, (3) the basis for any defense of estoppel and (4) the identities of any persons with knowledge of such matters who Natraceutical may call at the preliminary injunction hearing. In failing to answer, Natraceutical merely asserts that the Court "has not construed the claims of the '966 Patent and the '753 Patent," and that Mars has not yet provided its infringement contentions in affirmative expert reports. As to Natraceutical's first assertion, no *Markman* hearing has been scheduled by the Court, and the claims of the '966 Patent and the '753 Patent are almost certain not to be construed by this Court until <u>after</u> the preliminary injunction hearing. Thus, Natraceutical cannot justify its refusal to answer this Interrogatory on this basis. As to Natraceutical's second assertion, Mars already has provided claim construction and infringement contentions in its Memorandum in support of its request for preliminary injunction, filed on April 12, 2007. Natraceutical has now had two and one-half months to consider Mars' claim construction and infringement contentions. Accordingly, Natraceutical should promptly supplement its Response to Interrogatory No. 2, to provide the information requested.

Patty Shwartz, U.S.M.J.
June 25, 2007
Page 3

   e) *Defendant's Position.* On May 18, 2007, Mars served Interrogatories to Defendant Natraceutical S.A. Regarding Preliminary Injunction Issues ("Interrogatories"). The Interrogatories contained multiple and compound requests, totaling well more than the five (5) interrogatories allowed by the Court's April 26, 2007 Order on Informal Application (filed April 30, 2007).

   Interrogatory No. 2 is directed to Natraceutical's non-infringement positions. It was served one day after Natraceutical responded to the Complaint. There are two patents-in-suit -- the '753 patent and the '966 patent. Mars alleges infringement of the two claims of the '753 patent (claims 15 and 16) and eight claims of the '966 patent (claims 1-4 and 23, some of which are multiple dependent). Interrogatory No. 2 asks five discrete questions -- subparts (a) to (e) -- for each of the ten claims at issue in the Preliminary Injunction phase. That is a total of fifty (50) questions and, therefore, Interrogatory No. 2, by itself, violates the Court's limitation of five interrogatories. For this reason alone, Mars' request should be denied.

   In addition, on June 5, 2007, Natraceutical responded to the Interrogatories by objecting to the contention interrogatories as being overly broad, unduly burdensome, premature at this stage of the case, calling for legal conclusions, calling for information that will be the subject of expert testimony and discovery, and calling for information covered by the attorney-client privilege and the attorney-work product doctrine. See Exhibit A (Natraceutical's Responses and Objections to Plaintiff Mars, Inc.'s Interrogatories to Defendant Natraceutical S.A. Regarding Preliminary Injunction Issues).[1]

   Mars has the burden to prove infringement of each of the ten patent claims in issue. Mars has purchased Natraceutical's products and has tested them. Mars thus has in its possession all the information it needs. In addition, contrary to Mars' assertion, Mars has failed to fully construe the asserted claims. Rather, Mars regurgitates the claim language and concludes that the asserted claims cover Natraceutical's products. However, an infringement analysis involves two steps: (1) the meaning and scope of the claims must be determined (i.e., construing the claims), and (2) comparing the properly construed claims to the allegedly infringing product in order to determine whether the accused product falls within the scope of the properly construed claims. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Accordingly, just simply applying the claim language to Natraceutical's products without construing the claim terms, as Mars has done here, is improper. Natraceutical is entitled to receive Mars' detailed claim interpretations. Indeed, Mars' papers fail to even take into account the effects of the multi-year prosecution histories. See *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005)(intrinsic evidence includes the words of the claims themselves, the remainder of the specification, and the prosecution history).

   Moreover, such contention interrogatories are premature. No party has an absolute right to have answers to contention interrogatories, or to any kind of interrogatory. *In re Convergent Technologies Securities Litigation,* 108 F.R.D. 328, 333 (N.D. Cal. 1985). Indeed, to the extent permitted, Courts have held that judicial economy as well as efficiency for the litigants dictate

---

[1] The answer to Interrogatory Nos. 1 and 3-5 are not being submitted since at least one answer contains confidential information.

Patty Shwartz, U.S.M.J.
June 25, 2007
Page 4

that contention interrogatories are more appropriate after a substantial mount of discovery has been conducted. *Nestle Foods Corp. v. Aetna Casualty and Surety Co.,* 135 F.R.D. 101, 110-111 (D. N.J. 1990)(citing *In re Convergent Technologies Securities Litigation,* 108 F.R.D. at 336); *American Civil Liberties Union v. Gonzales,* 237 F.R.D. 120, 124 (E.D. Pa 2006)("Unlike in many cases, this case is very, very mature and the time is ripe for the parties to solidify their contentions); *In re Convergent Technologies Securities Litigation,* 108 F.R.D. at 338 (limiting the use of contention interrogatories early in the case).

This case is at the beginning stage of the Preliminary Injunction phase. In addition, no discovery schedule has been set, no Rule 26(f) conference has been held, and the Rule 16 conference is three months away. The Mars Preliminary Injunction discovery was propounded one day after Natraceutical filed its response to the Complaint. At this early stage, Natraceutical has not yet solidified its contentions and should not be required to answer Mars' contention interrogatories at this time.

Further, a party filing contention interrogatories early in the pretrial period, before substantial documentary testimonial discovery has been completed, has the burden of justification. *Fischer and Porter Co. v. Tolson,* 143 F.R.D. 93, 96 (E.D. Pa. 1992). The burden cannot be met by vague or speculative statements about what might happen if the interrogatories were answered, and the party must show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussion, or that such answers are likely to expose a substantial basis for a motion under *Rule 11* or *Rule 56. Id.* Mars' has failed to meet this burden, especially where it has purchased Natraceutical's products and has all the information it needs in hand.

For these reasons, Natraceutical respectfully requests that it not be required to supplement its responses to contention Interrogatory No. 2 at this time.

**2)    Natraceutical's Objections to Mars' First Set of Request for Admissions..**

**a/b)**    In Natraceuticals' Objections to Mars' First Set of Requests for Admissions to Natraceutical S.A ("Requests for Admissions"), Natraceutical did not specifically address the reasons that it was refusing to answer Mars' requests. Rather, Natraceutical globally refused to answer any of the Requests, claiming that such Requests for Admissions were "inappropriate, not authorized and premature." A copy of Mars' Requests for Admissions and Natraceutical's responses to the same are attached for the Court's reference as Exhibits B and C, respectively.

**c)**    Last week, counsel for both parties exchanged correspondence regarding this issue and discussed the matter further during a telephone conference on June 21, 2007, but were unable to resolve the dispute.

**d)**    *Plaintiff's Position.* The Court's Scheduling Order did not preclude Mars from serving Requests for Admission. Nor did the Court's Order provide that other discovery was to be delayed in view of Mars' motion for preliminary injunction. Mars provided to Natraceutical its initial Rule 26 disclosures, and provided Natraceutical the requisite thirty (30) days to respond to Mars' Requests for Admission. At no time during this 30-day period did Natraceutical notify

Patty Shwartz, U.S.M.J.
June 25, 2007
Page 5

Mars of their objections to Mars' Requests for Admissions, nor did Natraceutical try to resolve with Mars any issues related to those Requests.

Natraceutical's failure to respond to these Requests within the 30-day time period is particularly inexcusable here. The Requests specifically asked Natraceutical to admit or deny information about the nature of its own products. The answers to these Requests would have had the effect of eliminating many issues for trial.

For example, Requests 1-32 asked Natraceutical whether its CocoanOX 12 and 45 products included polyphenols, monomers, or oligomers, such as dimers, trimers, and so forth. That information is basic knowledge to any company in this industry, and is certainly within the current possession of Natraceutical. Thus, Natraceutical's failure to answer these Requests is inexcusable. The remaining Requests 33-40 all similarly relate to information within the current possession of Natraceutical, including the amount of procyanidins in its products, the fat content of its products, whether its products were derived from cocoa beans, whether its products are "extracts" or "powders," and whether its products were obtained by solvent extraction. Again, given that Natraceutical certainly knows the answers to most if not all of these Requests, there is no reasonable basis for its failure to admit or deny, and no basis upon which to object.

Rule 36 of the Federal Rules of Civil Procedure ("Rules") provides that Natraceutical's failure to respond to Mars' Requests for Admission within the time provided will result in the matters set forth being admitted. *See* FED. R. CIV. P. 36 ("Each matter of which an admission is requested shall be separately set forth[, and the] matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney); *see also DirecTV, Inc. v. Gallagher*, Case No. 03-2474, 2005 U.S. Dist. LEXIS 9898 (D.N.J. May 25, 2005) (the plaintiff's requests for admission were deemed admitted under the self-enacting provisions of Rule 36 as a result of defendant's failure to timely respond).

The 30-day deadline to respond to Mars' Requests has passed. Natraceutical has no reasonable basis for refusing to respond to Requests that relate to information that Natraceutical surely had in its possession, as of the date of the service of the Requests. Natraceutical has neither answered, nor specifically and in detail objected to, any of Mars' Requests for Admissions. Its refusal to answer frustrates the purposes of this and similar Federal Rules relating to discovery, which is to eliminate issues for trial. Accordingly, Mars requests that the Court issue a written order confirming that Mars' Requests are deemed admitted under the Federal Rules of Civil Procedure.

e)     *Defendant's Position.* Mars requested specific, limited, expedited discovery in its moving papers, and during the April 26th teleconference with the Court. The Court's April 26, 2007 Order on Informal Application (filed April 30, 2007) permitted certain discovery on the schedule set forth therein. Mars did not request, and the Court did not grant the right for either party to propound requests for admissions pursuant to Rule 36.

Patty Shwartz, U.S.M.J.
June 25, 2007
Page 6

In a Scheduling Order issued on April 27, 2006, the Court expressly stated in paragraph (5): "No formal discovery demands may issue pending the conference with the Court." The Rule 16 conference is scheduled for September 25, 2007. The parties are required to hold a Rule 26(f) conference by September 11, 2007, and submit a joint discovery plan to the Court by September 22, 2007. Although the parties have had a number of teleconferences regarding the authorized Preliminary Injunction discovery, no Rule 26(f) meeting has occurred.

On May 18, 2007, Mars served a First Set of Requests for Admission to Natraceutical ("RFAs"). This paper contained 40 separate requests to admit, seeking Natraceutical's contentions on what appear to be patent infringement issues. On June 18, 2007, Natraceutical responded to the RFAs by objecting to them as being improper, premature, not authorized by the Court, and in violation of paragraph (5) of the Court's April 27, 2007 Scheduling Order. See Exhibit 2.

Contrary to Mars' position, this case is not in full-blown discovery. Indeed, the Court's Scheduling Order bars the very discovery Mars has propounded. Moreover, there has been no Rule 26(f) conference and no discovery plan is in place. Thus, Mars' efforts to undertake open-ended discovery at this stage also violates Rule 26(d) ("...a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f).")

Still further, because the RFAs seek Natracetuical's contentions, they are premature at this early stage, under the authority discussed above.

For these reasons, Natraceutical respectfully requests that its objections to Mars' RFAs be sustained.

**3)    Ongoing discussions regarding the Protective Order.**

To date the parties have reached agreement on most provisions of the proposed Protective Order; however, a few ongoing issues still remain as to some of the proposed terms. We are hopeful that counsel for both parties can resolve all outstanding issues and finalize the proposed Protective Order, and then submit that proposed Order to the Court within the next few days. If, however, the parties are unable to reach agreement on the Protective Order, we wish to supplement this joint letter by no later than Friday, June 29, 2007.

Respectfully submitted,

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN

*/s/ Melissa E. Flax*

MELISSA E. FLAX

MEF
Attachments
cc:    Michael E. Patunas, Esq. (via email) (w/attachments)
       Linda A.O. Lamberson, Esq. (via email) (w/attachments)

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
A PROFESSIONAL CORPORATION