UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARS, INC., )
)
       Plaintiff, )
) Civil Action No. 2:07-CV-1574 (SRC)
vs. )
)
NATRACEUTICAL, S.A., )
) **JOINT DISCOVERY PLAN**
       Defendant. )

1. For each party, set forth the name of the party, attorney appearing, the firm name, address, e-mail address, telephone number and facsimile number. In addition, the lead counsel on each side should bring a business card which contains his/her e-mail address to the Rule 16 Scheduling Conference.

    Plaintiff, Mars, Inc.:

    Kenneth J. Jurek
    McDermott Will & Emery LLP
    227 West Monroe Street
    Chicago, IL 60606-5096
    E-mail: kjurek@mwe.com
    Telephone: 312.372.2000
    Facsimile: 312.984.7700

    John M. Agnello
    Carella, Byrne, Bain, Gilfillan,
      Cecchi, Stewart & Olstein
    5 Becker Farm Rd.
    Roseland, NJ 07068
    E-mail: jagnello@carellabyrne.com
    Telephone: 973.994.1700
    Facsimile: 973.994.1744

    Defendant, Natraceutical, S.A.:

    Mark Boland
    Sughrue Mion, PLLC
    2100 Pennsylvania Ave., NW
    Washington, D.C. 20037
    E-mail: mboland@sughrue.com
    Telephone: 202.293.7060
    Facsimile: 202.293.7860

    Allyn Z. Lite
    Lite, DePalma, Greenberg & Rivas, LLC
    Two Gateway Center, 12th Floor
    E-mail: alite@ldgrlaw.com
    Newark, NJ 07102-5003
    Telephone: 973.623.3000
    Facsimile: 973.623.1190

2. (a) Set forth a brief description of the case, including the causes of action and affirmative defenses asserted.

    The complaint filed by Mars on April 3, 2007 alleges that Natraceutical infringes U.S. Patent Nos. 6,790,966 ("'966 patent") and 6,312,753 ("'753 patent") by offering for sale, selling and importing into the United States cocoa extract and powder products known under the CocoanOX tradename. Mars seeks damages and injunctive relief to prevent further infringement. Mars also anticipates that it will amend the complaint to add claims of patent infringement (direct, contributory and/or inducement) of U.S. Patent Nos. 6,015,913, 6,372,267, 6,737,088, 6,905,715 and 6,777,005 (claims of these patents are attached hereto as Exhibit A).

    Natraceutical has denied that it infringes either the '966 or '753 patent. It also has asserted as defenses (a) invalidity under 35 U.S.C. §§ 101, 102, 103 and 112, (b) invalidity for failure to meet judicially created requirements for patentability and enforceability of patents, (c) prosecution history estoppel, (d) infringement estoppel, and (e) that any damages prior to actual notice of infringement are not recoverable by Mars.

    Natraceutical has also asserted a declaratory judgment counterclaim for non-infringement and invalidity, and is presently considering other claims and defenses.

    (b) Is this a fee-shifting case?

    Yes __X__  No _____

    If so, set forth legal authority.

    35 U.S.C. § 285 (providing for fee-shifting if the court finds the case "exceptional").

3.    Has this action been: Settled __No__   Discontinued __No__

    If so, has there been a Stipulation/Dismissal filed?

    Yes _____  No _____

4.    Have settlement discussions taken place?   Yes _____   No __X__

    If so, when:

    Attorneys for the parties are presently seeking to schedule a settlement meeting.

    (a)    What was plaintiff's last demand?

        (1)    Monetary demand: $ _____

        (2)    Non-monetary demand:_____

    (b)    What was the defendant's last offer?

        (1)    Monetary offer: $ _____

        (2)    Non-monetary offer: _____

5.    Core discovery needed to be able to discuss settlement in a meaningful way:

    Production and review of the parties' documents pertaining to liability (e.g., relating to infringement, validity and enforceability) and damages (e.g., relating to product markets, licensing efforts and sales); depositions of the parties' research and development personnel, including inventors, depositions of Mars' prosecuting attorneys, depositions of the parties' business personnel, depositions of third parties; expert reports pertaining to liability and damages.

6. The parties [have __X__ - have not _____] exchanged the information required by Fed. R. Civ. P. 26(a)(1). If not, state the reason therefore.

7. Explain any problems in connection with completing the disclosures required by fed. R. Civ. P. 26(a)(1).

   None.

8. The parties [have __X__ - have not _____] conducted discovery other than the above disclosures. If so describe.

   The parties have propounded and responded to interrogatories, document requests and requests to admit. Both parties have produced documents and document review and production is ongoing. Depositions on limited issues have been taken.

9. The parties [have __X__ - have not _____] met pursuant to Fed. R. Civ. P. 26(f).

   (a) If not, state the reason therefor.

   (b) If so, state the date of the meeting and the persons in attendance.

   September 11, 2007

   Kenneth J. Jurek, Daniel N. Christus for Mars

   John Scherling for Natraceutical

10. The following [is _____ - is not __X__] a proposed joint discovery plan.

    (a) Discovery is needed on the following subjects:

    Liability (patent infringement, validity and enforceability)
    Damages (e.g., product markets, licensing efforts and sales information)

    These matters will require discovery on at least the following issues:

    (1) the development, composition and properties of the accused products;

    (2) the factual bases for each party's claims, affirmative defenses and counterclaims, including any opinion of counsel upon which any party intends to rely;

    (3) the conception, design, development and reduction to practice of the claimed subject matter of the patents in suit and related patents;

    (4) potential prior art of the patents in suit;

    (5) prosecution of the patents in suit, as well as the prosecution of related patents referenced in the patents in suit;

    (6)    expert and third-party discovery on many of the above-listed items; and

    (7)    documents, testimony and expert opinion materials regarding damages and damage amounts.

(b)    Discovery [should ____ - should not __X__] be conducted in phases or be limited to particular issues. Explain.

(c)    Mars proposes a maximum of __30__ interrogatories by each party to each other party; Natraceutical proposes a maximum of __50_ interrogatories by each party to the other party, exclusive of those interrogatories already propounded.

<u>Mars position</u>:

Although Mars is likely to assert seven (7) patents in this case, the claims of many of the patents are similar and thus do not present multiple separate issues for discovery. For example, U.S. Patent No. 6,015,913 contains one independent claim relating to a method of processing cocoa beans. U.S. Patent No. 6,737,088 contains one independent claim calling for a cocoa extract which contains cocoa polyphenols (an issue raised by the asserted '966 patent) which is prepared by a process containing most of the same steps as in the '913 patent. U.S. Patent No. 6,905,715 calls for partially defatted cocoa solids prepared by essentially the same method. U.S. Patent No. 6,372,267 calls for a food composition comprising partially defatted cocoa solids prepared by essentially the same method. U.S. Patent No. 6,777,005 calls for a food composition that presents issues that are not different than those presented by the asserted '966 and/or '753 patents. In any event, Mars will ultimately assert fewer than fifty (50) claims from the seven patents.

<u>Natraceutical Position</u>:

Despite Mars' current position regarding the similarity of the claims in the asserted patents, Mars nevertheless is asserting seven patents containing nearly 120 claims. Even apart from the infringement issues raised by those patents and claims, Natraceutical will have to address the validity of those seven patents and nearly 120 claims on a claim-by-claim basis. Under these circumstances, Natraceutical submits that fifty interrogatories is reasonable.

Given the scientific nature of the subject matter at issue, final responses to contention interrogatories, which may be quite numerous given the number of claims in the patents asserted by Mars, would best be deferred until the conclusion of expert discovery.

(d)    Mars proposes a maximum of __20__ depositions to be taken by each party, excluding depositions already taken; Natraceutical proposes a maximum of _30_ depositions be taken by each party, excluding depositions already taken and excluding FRCP 30(b)(6) and expert depositions.

Mars Position:

Mars appreciates that 10 inventors are listed in the Mars patents, but not all of these depositions are reasonably likely to occur. Beyond that, not more than 10 additional depositions appear necessary. It appears that all relevant issues can be covered in the depositions of 2 marketing personnel, 1 person responsible for licensing efforts, 1 person knowledgeable about accounting matters and 1 or 2 persons knowledgeable about planning. It does not appear that more than three expert depositions will be required by each party.

If more than 20 depositions appear necessary, the parties can confer and seek leave of court as necessary.

Natraceutical Position:

Depositions that Natraceutical must take to properly prepare for trial, exclusive of depositions pursuant to FRCP 30(b)(6) and expert depositions, include the inventors on the patents asserted by Mars (approximately ten), the prosecuting attorneys (at least three), numerous Mars' business personnel as well as research and development personnel not specifically listed as inventors on the patents in suit, and various third parties, including licensees and potential licensees of Mars' products.

Natraceutical presently believes that thirty depositions, exclusive of depositions pursuant to FRCP 30(b)(6) and expert depositions, should be sufficient.

(e) Party with burden of proof expert reports due on: Mars proposes April 1, 2008; Natraceutical proposes March 31, 2009.

(f) Rebuttal expert reports due on: Mars proposes May 2, 2008; Natraceutical proposes April 30, 2009.

(g) Motions to amend or to add parties to be filed by: Mars proposes December 4, 2007; Natraceutical proposes July 31, 2008.

Mars Position:

Mars will seek leave to file an amended complaint by October 15, 2007. Mars expects that as in the case of the original complaint, Natraceutical will assert boilerplate defenses thereto and will continue to assert a declaratory judgment action as to validity, enforceability and/or infringement.

Natraceutical Position:

Mars' production to Natraceutical, which is continuing, is expected to include millions of pages of scientific, technical and business documents. Natraceutical must have sufficient opportunity to review and evaluate these documents and take appropriate depositions to adequately assess the claims and defenses that it may

be required to assert via further pleadings. Based on its evaluation of potential counterclaims in light of currently available information, Natraceutical anticipates that it ultimately may assert counterclaims going over and above the "boilerplate defenses" and declaratory judgment claims relating to infringement, validity and enforceability referred to by Mars. Such claims would require significant discovery beyond that necessary for ascertaining patent infringement, validity and enforceability.

(h) Dispositive motions to be served within: Mars proposes __30__ days; Natraceutical proposes __60__ days of completion of expert discovery.

Natraceutical Position:

Due to the wide-ranging and voluminous materials (spanning, for example, over fifteen years of research, development and related matters bearing on seven patents with nearly 120 claims) that are likely to be the subject of expert depositions, and the likelihood that any dispositive motions will require detailed review and analysis of the transcripts of those depositions, sixty days is appropriate to permit the parties sufficient time to adequately assess and prepare any dispositive motions as are warranted after the conclusion of expert discovery.

(i) All discovery to be completed by: Mars proposes July 3, 2008; Natraceutical proposes June 30, 2009. (If there is a need for a liability expert and it is necessary to defer the completion of expert discovery beyond this deadline, please state the reason why and the proposed date for completion of expert discovery).

Mars Position:

The parties already have exchanged and reviewed tens of thousands of pages of documents. There is no reason why production of the vast bulk of relevant and responsive documents cannot be completed within 60 days. Mars expects that its total document production aside from public scientific literature will not exceed 200,000 pages of documents.

Even if depositions do not commence until after January 1, 2008, all discovery reasonably can be completed within 6 months thereafter.

In addition, Mars will ultimately assert fewer than fifty (50) claims from the seven patents in suit.

Natraceutical Position:

For a number of reasons, a June 2009 discovery deadline is necessary under the circumstances of this case:

*-The Legal Bounds of the Case*: As noted above, Mars plans to add as many as five more patents to the case, thus putting in issue as many as seven patents and nearly 120 claims. Moreover, Natraceutical anticipates that it

ultimately may allege further counterclaims against Mars over and above those typically relating to infringement, validity and enforceability.

-*The Time Period at Issue*: According to Mars, its relevant work with the subject cocoa polyphenols spans in excess of fifteen years of research, development and related activities.

-*The Volume of Documents*: Mars previously represented that it will produce millions of pages of scientific, technical and business documents, and still has not completed its production of documents requested in May 2007 in connection with its subsequently abandoned motion for the preliminary injunction (and Natraceutical is aware of no reason why those documents still should not be produced despite Mars' ultimate withdrawal of the motion). As the court is aware, the parties have not yet commenced discovery beyond their initial disclosures and the limited discovery undertaken with respect to the preliminary injunction motion. Despite Mars' current representation that, apart from the vast public scientific literature addressing the subject matter of the patents in suit, Mars' total document production will not exceed 200,000 pages, Mars cannot predict with any certainty that it will not produce even more documents after the parties amend their pleadings, discovery commences on the merits, Natraceutical propounds additional document requests and Mars produces responsive documents from its multiple facilities and numerous scientists and business personnel.

-*The Number of Witnesses*: Exclusive of Rule 30(b)(6) and expert depositions, to properly prepare for trial Natraceutical alone will require approximately thirty depositions of the inventors (approximately ten) on the patents asserted by Mars, the prosecuting attorneys (at least three), numerous Mars' business personnel as well as research and development personnel not specifically listed as inventors on the patents in suit, as well as various third parties, including licensees and potential licensees of Mars' products.

-*Foreign Depositions and Documents*: As Natraceutical is base in Spain, and its pertinent personnel reside in Spain, a number of the depositions in this case will take place in Spain and perhaps other foreign countries, such as Central American countries with significant cocoa operations. Many pertinent Natraceutical documents are in Spanish and require time to translate for use in this litigation.

-*Testing and Analysis*: Natraceutical anticipates the need to conduct scientific testing and anlaysis of various prior art compositions and methods uncovered in the preliminary injunction discovery phase, and also may be required to conduct testing and analysis of its own products regarding infringement of the multiple patents and claims Mars plans to assert herein.

Given the extent of fact discovery that the experts must review and evaluate, and the likelihood that the parties will have multiple liability experts as well as

  damages experts, a separate period for expert reports and depositions, as well as the responses to contention interrogatories, is appropriate in this case.

  Accordingly, with the parties moving forward with reasonable diligence, and absent significant discovery disputes or other delays, Natraceutical submits that fact and expert discovery reasonably can be completed as follows:

    Fact Discovery Completed By:  December 15, 2008

    Expert Discovery Completed By:  June 30, 2009

  (j) Set forth any special discovery mechanism or procedure requested, including data preservation orders or protective orders:

The court has entered a document confidentiality order.

Mars believes that a Markman hearing to construe claim terms will aid in the disposition of this case. While Natraceutical is willing to discuss the issue further, at this juncture Natraceutical does not believe that a Markman hearing is necessary or appropriate.

  (k) A pretrial conference may take place on any date after:  Mars proposes October 1, 2008; Natraceutical proposes October, 2009.

11. Do you anticipate any discovery problem(s)?  Yes __X__   No _____

If so, explain. Although the parties are attempting to reach a resolution of the issue, discovery disputes have arisen and may continue with respect to discovery of information pertaining to Mars' licensing negotiations with third parties.

12. Do you anticipate any special discovery needs (i.e., videotape/telephone depositions; problems with out-of-state witnesses or documents, etc.)?  Yes __X__   No _____

If so, explain.

Depositions likely will be videotaped. Some depositions will be conducted in Spain and perhaps other foreign countries as well. Some deponents may require an interpreter, and numerous documents require translation.

13. State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil Rule 20.1 or otherwise), mediation (pursuant to Local Civil Rule 30.1 or otherwise), appointment of a special master or other special procedure. If not, explain why and state whether any such procedure may be appropriate at a later time (*i.e.*, after exchange of pretrial disclosures, after completion of depositions, after disposition or dispositive motions, etc.).

Natraceutical believes that due to the extensive discovery required, the case will not be ripe for any form of alternative dispute resolution for some time. The parties concur, however,

that the case may be appropriate for mediation after the parties have submitted their expert reports.

14. Is this case appropriate for bifurcation?

   Mars Position: Yes _____ No __X__

   Natraceutical Position: Yes __X__ No _____

   Natraceutical reserves the right to move for bifurcation of issues and claims as permitted by FRCP 21, 42.

15. An interim status/settlement conference (with clients in attendance), should be held during the month of: Mars proposes April, 2008; Natraceutical proposes January, 2009.

16. We [do _____ do not __X__ ] consent to the trial being conducted by a Magistrate Judge.


_____/s/ John M. Agnello_____                    ___September 21, 2007___
Attorneys for Plaintiff, Mars, Inc.                                    Date

Kenneth J. Jurek
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, IL  60606-5096
E-mail: kjurek@mwe.com
Telephone: 312.372.2000
Facsimile: 312.984.7700

John M. Agnello
Carella, Byrne, Bain, Gilfillan,
  Cecchi, Stewart & Olstein
5 Becker Farm Rd.
Roseland, NJ  07068
E-mail: jagnello@carellabyrne.com
Telephone: 973.994.1700
Facsimile: 973.994.1744

| | |
|---|---|
| /s/ Allyn Z. Lite<br>Attorneys for Defendant, Natraceutical, S.A. | September 21, 2007<br>Date |

Mark Boland
Sughrue Mion, PLLC
2100 Pennsylvania Ave., NW
Washington, D.C. 20037
E-mail: mboland@sughrue.com
Telephone: 202.293.7060
Facsimile: 202.293.7860

Allyn Z. Lite
Lite, DePalma, Greenberg & Rivas, LLC
Two Gateway Center, 12th Floor
E-mail: alite@ldgrlaw.com
Newark, NJ  07102-5003
Telephone: 973.623.3000
Facsimile: 973.623.1190